IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

STEVEN C. HAYES                                                                                          PLAINTIFF

v.                                          Civil No. 6:20-CV-06058

DR. THOMAS N. DANIEL; DR. NANETTE                                                                        DEFENDANTS
VOWELL; PHYSICIAN ASSISTANT
SHARONDA S. LONG; DR. LARRY
DAVIS D.D.S.; DR. MADISON
TALLIAFERRO, D.D.S.; NURSE JASON
M. KELLEY; DR. JEFFREY STIEVE;
RORY GRIFFIN (Deputy Director of
Health); OMBUDSMAN CHARLOTTE
GARDNER; STAFF PSYCHIATRIST
EUGENE Y. LEE; STAFF PSYCHIATRIST
RAYMOND K. MOLDEN; STAFF
PSYCHIATRIST SHAWN M. RICHARD;
STAN WOFFORD (Senior Vice President of
Correct Care Solutions "CCS"); JORGE
DOMINICIS (Executive of CCS/Wellpath);
GERARD "JERRY" BOYLE (Founder of
CCS); NURSE PARSONS (Wellpath); and,
MAIL ROOM SUPERVISOR SUE ALFORD
(ADC)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

1

## I. BACKGROUND

Plaintiff filed his Complaint on June 9, 2020. (ECF No. 1). On June 10, 2020, the Court entered an Order directing Plaintiff to file an Amended Complaint by July 1, 2020. (ECF No. 7). When Plaintiff failed to submit an Amended Complaint, the Court entered a Show Cause Order. (ECF No. 8). Plaintiff submitted his Amended Complaint on July 14, 2020, with no explanation for his failure to meet the initial deadline.[1] (ECF No. 9).

Plaintiff alleges that his federal constitutional rights have been violated by the Arkansas Department of Correction ("ADC") and their contracted healthcare provider Correct Care Solutions (now Wellpath, L.L.C.) based on the denial of adequate medical care starting in 2014. He brings fourteen separate claims.

First, Plaintiff alleges that Dr. Raymond K. Molden ignored his current medication administration record ("MAR") from the Saline County Jail in Benton, Arkansas. Plaintiff alleges Dr. Molden abruptly stopped his psychiatric medications on December 19, 2014, resulting in a severe psychotic episode and at least two attempted suicides. Plaintiff alleges that Dr. Molden knew or should have known that his medications were taper-stop only, and the abrupt cessation of a taper-stop medication is cruel and unusual punishment. Plaintiff alleges that Dr. Molden's denial of psychiatric medication is ongoing as of June 15, 2020. (ECF No. 9 at 4). Plaintiff further alleges that by custom, Wellpath does not treat insomnia and other serious mental health needs, even though sleep is a basic need. (*Id*. at 5). Plaintiff proceeds against Dr. Molden is both his official and personal capacity. (ECF No. 9 at 4).

---

[1] The Court will accept Plaintiff's Amended Complaint for screening despite the failure to explain the delay. Plaintiff is advised that any further failure to meet a deadline can result in the dismissal of his case for failure to obey a Court Order and failure to prosecute.

Second, Plaintiff alleges that from August 23, 2017 to December 11, 2017, Dr. Daniel refused to treat Plaintiff's urinary incontinence with pull-ups or adult diapers. Plaintiff suffered rashes due to sleeping in puddles of urine, and suffered from humiliation, depression, and suicidal ideation. (*Id*. at 5). Plaintiff proceeds against Dr. Daniel in his personal capacity. (*Id*.).

Third, Plaintiff alleges that from August 23, 2017 to the present, Dr. Daniel, Dr. Vowell, Nurse Kelley, Physician Assistant ("PA") Long, Dr. Stieve, and Crystal McCoy denied him urinary incontinence supplies, including pull ups, change pads, extra sheets, and other bedding. (*Id*. at 6). Plaintiff alleges that other inmates with urinary incontinence received these supplies; he is not aware of any other inmate with urinary incontinence who has been denied supplies. Plaintiff further alleges that he was frequently woken up by other inmates who demanded that he clean up and change his bed when urine ran off his mat onto the floor. This resulted in chronic sleep-deprivation. Plaintiff believes the denial of incontinence supplies was a form of retaliation because he filed grievances concerning his medical care. (*Id*. at 11). Plaintiff proceeds against these Defendants in their personal capacity. (*Id*. at 6).

Fourth, Plaintiff alleges Dr. Daniel, Ombudsman Gardner, and PA Long denied him medical care for his arthritis starting on August 23, 2017. He alleges he had been given an extra mat "restriction" since 2015. In 2017, Dr. Daniel renewed his mat restriction, and added a restriction of no prolonged sunlight due to one of his drug prescriptions. In August 2018, however, Dr. Daniel refused to renew the mat and prolonged sunlight restriction, stating there was no medical necessity. PA Long also stated he no longer met the requirements for an extra mat. Long told him the policy had changed, but could not name the policy in question. Ombudsman Gardner told him it was not Wellpath's responsibility to provide comfortable bedding. As a result, Plaintiff suffers from spine and hip pain without the extra mat. (*Id*. at 11). Plaintiff alleges it is a Wellpath

custom to deny extra mats even if an inmate has had one for years and suffers from bone pain when laying down on inadequate bedding. Plaintiff alleges many inmates who have gone through back surgery or have spinal arthritis, such as he does, and who previously qualified for an extra mat, have also had their extra mats taken in 2018-2019. (*Id*.). Plaintiff proceeds against these Defendants in both their official and personal capacities. (*Id*.).

Fifth, Plaintiff alleges Dr. Davis and Dr. Talliaferro have provided him with inadequate and untimely dental care starting in November 2016. (*Id*. at 11). Plaintiff alleges that delays in dental care have resulted in the loss of teeth that could have been saved if seen to in a timely manner. The delays have also caused severe pain and suffering. Further, when more than one repair is needed, one repair is made, then the other repair is moved to the bottom of the repair list. Plaintiff alleges he has been required to have teeth extracted before others would be filled and has waited for nearly one and a half years to have two teeth filled. He was told last week that one tooth must now be extracted due to the delay. Plaintiff further alleges that Dr. Talliaferro is physically incapable of performing his job because his hands shake. Teeth filled by Talliaferro have needed to be extracted, and he left pieces of tooth in Plaintiff's jaw after an extraction. Plaintiff then needed to undergo dental surgery where his jawbone was shaved and leftover parts of teeth removed. Plaintiff states he just needs the pain to stop; it currently hurts to chew soft noodles. (*Id*. at 12). Plaintiff alleges that Wellpath has a custom of delaying dental care so that inmates will choose extractions, which are provided in a timelier manner than other dental work, and of moving additional repairs to the bottom of the repair list. (*Id*.) Plaintiff proceeds against these Defendants in both their official and personal capacities. (*Id*.).

Sixth, Plaintiff alleges that PA Long, Dr. Daniel, Dr. Vowell, Dr Stieve, Defendant McCoy, and Nurse Kelley denied him medical care for a persistent cough and chest/lung pain from 2015

to present.  (*Id*. at 12).  Plaintiff has had three positive tuberculosis tests and has nodules in his lungs that have increased in size.  Despite these medical issues, PA Long told Plaintiff in May 2020 that the "medical team" had decided they were not going to follow the nodules any longer, and refused to do anything for his lung pain other than perform an x-ray.  When Plaintiff was seen at the University of Arkansas for the Medical Sciences ("UAMS") he was told to come back every six months for a CT scan.  Plaintiff's last CT scan was May of 2019.  Dr. Daniel and PA Long have refused to treat his lung pain or his persistent cough.  (*Id*. at 12-13).  Plaintiff proceeds against these Defendant in their personal capacity.  (*Id*. at 13).

Seventh, Plaintiff alleges that Dr. Vowell and Dr. Daniel denied him adequate medical care for his weak bowels starting in 2015 to present.  (*Id*. at 13).  Specifically, he alleges he has been on daily Milk of Magnesia since he was a teenager and hospitalized for two weeks for an intestinal impaction, and two members of his family must "bowel assist" nearly every day.  Dr. Vowell said Plaintiff was abusing his Milk of Magnesia and discontinued it.  She then prescribed an "abusive dose" of PEG 3350.  (*Id*.).  Dr. Daniel has refused to resume Milk of Magnesia daily as needed.  He is currently only allowed Milk of Magnesia every three days, resulting in bloating and pain.  (*Id*.).  Plaintiff proceeds against these Defendants in their personal capacity.  (*Id*. at 13).

Eighth, Plaintiff alleges that Dr. Vowell and PA Long have provided inadequate care for his acid reflux from May 10, 2017, until the present.  Plaintiff alleges that these Defendants have refused to provide him with an alternative to Omeprazole, a proton pump inhibitor which is known to cause stomach cancer.  He must, therefore, either suffer from acid reflux or risk stomach cancer.  Plaintiff believes Dr. Vowell denied him any alternative in retaliation for his continued request for Milk of Magnesia, as she told him that he had Milk of Magnesia for his heartburn.  (*Id*. at 13).  Plaintiff proceeds against these Defendants in their personal capacity.  (*Id*. at 13).

Ninth, Plaintiff alleges that Defendants Boyle, Dominicis, and Wofford ignored his complaints of inadequate medical care from 2016 to the present, resulting in Plaintiff's pain and suffering. Plaintiff notified these individuals of his issues, and they ignored him. Defendant Wofford referred his complaints to Ombudsman Gardener concerning LPN Gifford, and Plaintiff did not have to been seen by Gifford again. Plaintiff states these Defendants had the power and authority to correct his inadequate medical care but instead had a custom of ignoring complaints of inadequate medical care. (*Id*. at 14). Plaintiff proceeds against these Defendants in both their official and personal capacities. (*Id*.).

Tenth, Plaintiff alleges Defendants Griffin and McCoy "purposely twist my words on grievances and make false statements and unfair judgments that result in me continuing to suffer instead of having fair resolution of inmate grievances." (*Id*. at 14). Plaintiff cites OR-20-00144 as an example, stating that it contains obviously fabricated statements. Plaintiff alleges it is a custom of the ADC to provide false information on grievances to avoid finding them with merit. (*Id*.). Plaintiff proceeds against these Defendants in both their official and personal capacities. (*Id*.).

Eleventh, Plaintiff alleges Nurse Parsons denied him medical care for foot pain on June 13, 2019. (ECF No. 14). He alleges she refused to acknowledge that his toe was swollen, refused to provide any care, and delayed his appointment with a podiatrist. He was seen by a podiatrist on August 20, 2019, at which time the specialist diagnosed him with torn ligaments "within 1 minute" of seeing him, and prescribed surgery. Plaintiff underwent surgery on October 31, 2019. (*Id*. at 14-15). He alleges Nurse Parsons regularly ignores his medical complaints. Plaintiff proceeds against this Defendant in her personal capacity. (*Id*. at 14).

6

Twelfth, Plaintiff alleges that ADC Deputy Director of Health Kelley denied him extra time to review his medical records from 2018, "with one specific date of 8/8/19," and continuing until Don McCoy took over the position. Plaintiff alleges he ignored ADC policy and made false statements about ADC policy to deny Plaintiff extra time each month to review his medical records. This caused a delay in Plaintiff getting needed medical care, including dental care which could have saved two of his teeth. (*Id*. at 15). Plaintiff proceeds against this Defendant in his personal capacity. (*Id*. at 15).

Thirteenth, Plaintiff alleges Mail Room Supervisor Alford intercepted his medical records from the Arkansas State Hospital, which were marked as "Certified - Privileged Mail." Plaintiff alleges that at the time of filing this complaint, he has still not been notified by Alford that he had received certified mail and has not received the medical records. Plaintiff had requested these records to show that he had been diagnosed with previously existing illness, and to request appropriate treatment. Plaintiff believes they were intercepted to prevent him from grieving the denial of physical and mental health care. (*Id*. at 15-16). Plaintiff knows he received the mail because he received the certified mail receipt from the medical records analyst at the state hospital, signed by Alford. (*Id*. at 16). Plaintiff proceeds against this Defendant in her personal capacity. (*Id*. at 16).

Fourteenth, Plaintiff alleges that ADC Deputy Director of Health Griffin does not investigate or verify grievance information. The improper processing of grievances has "many times" caused inadequate medical care to continue. Plaintiff alleges this is a custom in the ADC. (*Id*. at 16). Plaintiff proceeds against these Defendant Griffin in both his official and personal capacities. (*Id*.).

Plaintiff seeks compensatory and punitive damages. (*Id*. at 7).

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III. ANALYSIS

### A. Statute of Limitations

Plaintiff commenced this action on June 9, 2020. Thus, any portion of his claims which occurred prior to June 9, 2017, are barred by the statute of limitations.[2] Section 1983 does not contain its own statute of limitation. Instead, causes of action under § 1983 are governed by "the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987) (§ 1981 case). *See also Wilson v. Garcia*, 471 U.S. 261, 268 (1985) (§ 1983 case); *Bell v. Fowler*, 99 F.3d 262, 265-266 (8th Cir. 1996) (§ 1985 case). In Arkansas, this is the

---

[2] The Court notes that this does not eliminate any of his claims in their entirety.

three-year personal injury statute of limitations, Ark. Code Ann. § 16-56-105(3). *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001) (Ark. Code Ann. § 16-56-105(3) is the statute of limitations applicable to § 1983 cases).

### B. Official Capacity Claims Against ADC Employees Griffin, Gardner, Alford, and McCoy

Plaintiff's official capacity claims against all ADC Defendants are subject to dismissal. States and state agencies are not "persons" subject to suit under § 1983. *Howlett v. Rose*, 496 U.S. 356 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri*, 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)). "A suit against state employees in their official capacities is the functional equivalent of a suit against the State." *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2013). As Defendants Griffin, Gardner, Alford, and McCoy are all employees of the Arkansas Department of Correction, Plaintiff's official capacity claims against them are subject to dismissal.

### C. Defendants Lee and Richard

Plaintiff's claims against these Defendants are subject to dismissal. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)). Thus, to state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's federal constitutional rights. Plaintiff has not alleged a causal link between

either of these Defendants and his claims. *See Martin*, 780 F.2d 1337 (even a pro se Plaintiff must allege specific facts sufficient to state a claim). Merely listing a defendant in a case caption is insufficient to support a claim against the defendant. *Krych v. Hass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (per curiam) (noting that court properly dismissed pro se complaint that was silent as to defendant except for his name appearing in caption)). Plaintiff has failed to allege any claims against Staff Psychiatrists Eugene Y. Lee and Shawn M. Richard, instead only listing them as Defendants in the caption of the case. His claims against them are therefore subject to dismissal.

### D. Grievance Claims Against Defendants Griffin and McCoy

Plaintiff's claims that Defendants Griffin and McCoy "twist words" and make false statements in grievances, and that Defendant Griffin does not investigate or verify grievance information, are subject to dismissal. The Eighth Circuit has made it clear prisoners do not have a constitutional right to a prison grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (no claim when "various defendants denied his grievances or otherwise refused to help him"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (no claim when defendants failed to timely and properly respond to a grievance). Thus, a prison official's failure to properly respond to a grievance, standing alone, is not actionable under § 1983. *Id*. As there is no constitutional right to either a grievance procedure or a grievance response, Plaintiff failed to state a plausible claim based on these Defendants' handling of his grievances.

### IV. CONCLUSION

Accordingly, it is recommended that the following claims be DISMISSED WITHOUT PREJUDICE:

1. All portions of claims which occurred prior to June 9, 2017.

2. All official capacity claims against ADC employees Griffin, Gardner, Alford, and McCoy.

3. Personal capacity claims against Griffin and McCoy regarding the handling of grievances. Defendant Griffin should be terminated as a Defendant in this case.

4. Claims against Defendants Lee and Richard. These Defendants should be terminated as Defendants in this case.

It is further recommended that Plaintiff's other claims remain for service and review.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of August 2020.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE